UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HOUSTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>L. ELDRIDGE, et al.,<br><br>　　　　Defendants. | No. 2:16-cv-2561 WBS KJN P<br><br>ORDER |

I. Introduction

　　Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's motion to compel. For the reasons stated herein, plaintiff's motion to compel is denied in part and granted in part.

II. Plaintiff's Claims

　　To put the motion in context, the undersigned summarizes plaintiff's claims herein.

　　This action proceeds on the original complaint against defendants Anderson, Barajas, Brewer, Eldridge, Huynh, Morales, Nyberg, Pacheco, Padilla, Rowe, Stanfield and Stuhr.

　　Plaintiff alleges that on February 5, 2016, he returned to California State Prison-Sacramento ("CSP-Sac") after being out to court. After plaintiff obtained a box of his property from receiving and release ("R & R"), defendants Brewer and Huynh took plaintiff to A Facility, Building 3, cell 107. Plaintiff noticed that cell 107 was extremely dirty. Plaintiff told defendants

Brewer and Huynh that the cell was dirty and that it was supposed to be clean for new arrivals. Defendant Brewer then became angry and said, "O.K. We're going to do our job."

Defendants Brewer and Hyunh then put plaintiff in the B Section cage, still wearing handcuffs and leg irons. Defendants Brewer, Hyunh and Anderson then returned and said, "let's go." Plaintiff had a gut feeling that the defendants were going to harm him. Plaintiff stated that he was not going anywhere until he saw the lieutenant. Defendant Brewer then opened the cage, snatched plaintiff by the shoulder and shoved plaintiff into the hallway of the A3 building rotunda blind area. At that point, defendant Brewer ordered defendant Stanfield to put a spit mask on plaintiff. After the spit mask was on plaintiff, defendant Brewer allegedly slammed plaintiff's face against the wall, grabbed the back of plaintiff's head and repeatedly bashed plaintiff's face into the wall. Plaintiff begged defendant Brewer to stop. Defendant Brewer took plaintiff to the floor and began punching and elbowing plaintiff in the face over and over again. Defendant Huynh allegedly started jumping up and down on plaintiff's lower back and rib area with his knees. Plaintiff alleges that defendants Stanfield and Anderson took part in this beating.

Plaintiff was falsely charged with battery on a peace officer based on the February 5, 2016 incident.

On February 16, 2016, plaintiff made an excessive force video. Defendants Brewer and Huynh retaliated against plaintiff, for plaintiff making the video and filing a complaint against them regarding the February 5, 2016 incident, by falsely charging plaintiff with delaying a peace officer of their duties.

On or around July 2, 2016, defendant Eldridge decided to release plaintiff from administrative segregation ("ad seg") to the A Facility EOP mainline, where defendants Brewer, Huynh and Anderson worked. Plaintiff alleges that defendant Eldridge knew there was a substantial risk of harm if plaintiff was released to the facility where those defendants worked.

Plaintiff alleges that when defendants Brewer and Huynh saw him on the A Facility exercise yard on July 17, 2016, they immediately began harassing plaintiff. As plaintiff walked to his building defendant Brewer charged after plaintiff, twisted him around, and allegedly started punching plaintiff in the face. Defendants Padilla and Huynh then allegedly tackled plaintiff

the ground and had their knees in plaintiff's back. Defendant Brewer tried to poke out plaintiff's eyes with his fingers. Plaintiff alleges that the camera footage from the A Facility yard will show plaintiff being peaceful, and defendants attacking him.

Later that day, i.e., July17, 2016, plaintiff was placed in ad seg, A Facility Building 5. As soon as plaintiff entered the blind area of the rotunda, the escorting officer (defendant Nyberg) said, "What happened earlier?" Defendant Nyberg then allegedly tripped plaintiff with his feet and slammed plaintiff to the ground. Defendants Nyberg, Morales and Barajas then began pounding on plaintiff. Defendants Stuhr, Rowe and Pacheco allegedly kneed plaintiff in the side and lower back area, and bent plaintiff's finger all the way back.

III. Motion to Compel

Defendants argue that plaintiff's motion to compel should be denied because he failed to provide the at-issue discovery requests and the responses to which he takes issue, as required by Local Rule 250.3(c). Defendants are correct that plaintiff failed to provide copies of his discovery requests and defendants' responses with the motion to compel. However, because both parties have addressed the merits of plaintiff's claims, and plaintiff attached the at-issue discovery requests and responses to his reply, plaintiff's failure to comply with Local Rule 250.3(c) is excused.

    A. Request for Records Regarding Inmate Johnson

*Background*

Plaintiff requested the CSP-Sac "logs and records of inmate Johnson, V-14425, housed on B Facility at the time of July 2016 to prove that CSP-Sac knew that inmate Johnson V-14425 was already house on B Facility for awhile and was on my enemy list when I was release to A Facility in July 2016." (ECF No. 40 at 2.) In the motion to compel, plaintiff explains the relevance of information regarding inmate Johnson. Plaintiff states that defendants claim that after the committee released plaintiff from ad seg, an enemy situation developed with inmate Johnson. (ECF No. 39 at 1, 3.) Plaintiff argues that because defendants are using inmate Johnson as part of

////

////

3

their defense, plaintiff has a right to the logs and records as evidence.[1] (Id.)

In response defendants objected that information pertaining to persons who are not parties to this action is protected by the privacy rights of those persons, under state and federal law. (ECF No. 40 at 2.) Defendants also objected that the request sought information deemed confidential under California Code of Regulations, Title 15, § 3321, because the disclosure could endanger the safety of other inmates and staff and jeopardize the safety of the institution. (Id.) Defendants also objected that plaintiff did not specify a category of documents with reasonable particularity. (Id.) Without waiving those objections, defendants produced to plaintiff a copy of his most recent enemy list. (Id.)

In the motion to compel, plaintiff clarified that he sought the "logs and records" for inmate Johnson while he was housed on B Facility at CSP-Sac from February 5, 2016, through July 17, 2016. (ECF No. 39 at 1.)

*Legal Standard*

The Supreme Court has long noted that privileges are disfavored. Jaffee v. Redmond, 518 U.S. 1, 9 (1996). "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." Tornay v. United States, 840 F.2d 1424, 1426 (9th Cir. 1988). Privileges are to be "strictly construed" because they "impede full and free discovery of the truth." Eureka Fin. Corp. v. Hartford Acc. and Indem. Co., 136 F.R.D. 179, 183 (E.D. Cal. 1991). "If the privilege is worth protecting, a litigant must be prepared to expend some time to justify the assertion of the privilege." Id.

In civil rights cases brought under section 1983, questions of privilege are resolved by federal law. Kerr v. U.S. District Court for the Northern District of California, 511 F.2d 192, 197 (9th Cir. 1975). "State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases." Kelly v. City of San Jose, 114 F.R.D. 653, 655–56 (N.D. Cal. 1987).

////

---

[1] The relevancy of the information regarding inmate Johnson is not entirely clear. However, defendants do not object to this request on relevancy grounds.

4

Nevertheless, "[f]ederal common law recognizes a qualified privilege for official information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing Kerr, 511 F.2d at 198). The official information privilege ensures disclosure of discoverable information without compromising the state's interest in protecting the privacy of law enforcement officials and in ensuring the efficacy of its law enforcement system. Kelly, 114 F.R.D. at 662–63.

"To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." Sanchez, 936 F.2d at 1033–34. "In the context of civil rights suits against [corrections officials], this balancing approach should be 'moderately pre-weighted in favor of disclosure.'" Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (quoting Kelly, 114 F.R.D. at 661).

The party invoking the privilege must at the outset make a "substantial threshold showing" by way of a declaration or affidavit from a responsible official with personal knowledge of the matters attested. Soto, 162 F.R.D. at 613. "The claiming official must 'have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced' and state with specificity the rationale of the claimed privilege." Kerr, 511 F.2d at 198 (citation omitted). The affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made. Soto, 162 F.R.D. at 613. In addition, "[t]he asserting party, as in any case where a privilege is claimed, must sufficiently identify the documents so as to afford the requesting party an opportunity to challenge the assertion of privilege." Miller v. Panucci, 141 F.R.D. 292, 300 (C.D. Cal. 1992).

*Discussion*

Defendants have not adequately demonstrated that all of the documents sought regarding inmate Johnson are privileged. Defendants' reliance on state law to assert a privilege is improper. Defendants also fail to articulate the federal law relied on for assertion of a privilege. To the extent defendants rely on official privilege, defendants also fail to provide a declaration from a responsible official.

Nevertheless, the undersigned agrees with defendants that plaintiff's request for "logs and records" showing that inmate Johnson was housed on B Facility for "awhile" is vague, even as clarified in the motion to compel. However, it is unclear whether plaintiff's current enemy list includes and identifies inmates who were plaintiff's enemy in July 2016, i.e., the date referred to in the at-issue request. Because it is clear that plaintiff is seeking to determine whether prison officials had information showing that inmate Johnson was his enemy in 2016, defendants shall clarify whether the enemy list provided to plaintiff includes and identifies the inmates who were his enemies in 2016. If the current enemy list does not reflect plaintiff's enemies in 2016, defendants shall provide plaintiff with a list of his enemies in 2016, including which of those inmates were housed on B Facility on any dates between February 5, 2016, and July 17, 2016.

B. Request for Records Re: Enemies

Plaintiff requested, "the records of my enemy list and the record showing how long my enemy was on B Facility at CSP-Sacramento." (ECF No. 40 at 2.)

Defendants objected to this request on grounds that it was duplicative of the request for information regarding inmate Johnson. (Id.) Defendants objected that to the extent plaintiff sought information regarding third parties, such information is protected by the privacy rights of those persons under state and federal laws. (Id.) Defendants objected that disclosure of third party information could jeopardize the safety of those persons and others identified in the requested documents. (Id. at 3.) Without waiving objection, defendants referred plaintiff to the current enemy list provided in response to the request for information regarding inmate Johnson. (Id.)

////

At the outset, the undersigned observes that defendants do not object to this request on the grounds that it is vague, as they did with the request for documents regarding inmate Johnson. In this request, plaintiff is apparently seeking documents showing how long his enemies had been housed on B Facility at CSP-Sac prior to February 2016. Plaintiff's current enemy list does not respond to this request because plaintiff is seeking information regarding his enemies in 2016 and how long they were housed on B Facility.

Defendants have not adequately demonstrated that the documents sought regarding plaintiff's enemies, and how long they were housed on B Facility prior to February 2016 are privileged. Defendants' reliance on state law to assert a privilege is improper. Defendants also fail to articulate the federal law relied on for assertion of a privilege. To the extent defendants rely on official privilege, defendants also fail to provide a declaration from a responsible official. Within 14 days Defendants shall provide plaintiff with a list of his 2016 enemies, including which of those inmates were housed on B Facility on any dates between February 5, 2016, and July 17, 2016.

### C. Request for Complaints Against Defendants

In request no. 2, plaintiff sought, "discovery of all the 602 complaints and citizen complaints that was written on any of the defendants regarding discrimination, racial bias or excessive force." (ECF No. 40 at 3.) In request no. 16, plaintiff sought, "all of the names and CDC #'s of all inmates that wrote 602 complaints on any and all of the defendants regarding racial bias and excessive force and discrimination." (Id.)

Defendants objected to this request on the grounds that it was vague and ambiguous as to the time frame of the requested complaint. (Id.) Defendants also objected that the information sought was not relevant. (Id.) Defendants also objected that because of the number of defendants, the request was overly burdensome. (Id.) Defendants also objected on the grounds that the request sought information pertaining to persons not parties to this action. (Id.) Defendants argued that disclosure of third party information could jeopardize the safety of the institution. (Id.) Finally, defendants objected that to the extent plaintiff referred to himself, the documents were equally available to him in his central file. (Id.)

Finally, defendants state that they provided plaintiff with a privilege log and a supplemental privilege log indicating that there are twenty-four complaints alleging either excessive force, racial bias or discrimination against defendants. (Id. at 5.) Plaintiff attached a copy of a privilege log to his reply to defendants' opposition. (ECF No. 41 at 12-24.) The privilege log identifies inmate grievances filed in 2014-2017. (Id.)

While defendants' object that plaintiff's request is overbroad, the compilation of the privilege log containing grievances filed in 2014-2017 undermines this objection. However, the undersigned agrees that grievances regarding racial discrimination and general "discrimination" are not relevant. The complaint does not state a claim for racial discrimination.[2] The undersigned also agrees that complaints filed by plaintiff himself against defendants alleging excessive force are equally available to plaintiff.

Plaintiff is entitled to discovery of grievances filed by other inmates alleging that defendants Brewer, Hyunh, Anderson, Stanfield, Padilla, Nyberg, Morales, Barajas, Stuhr, Rowe and Pacheco used physical violence on an inmate. See Taylor v. O'Hanneson, 2014 WL 2696585 at *5 (E.D. Cal. 2014) (inmate entitled to grievances concerning mistreatment by defendants). Plaintiff is not entitled to grievances filed against defendant Eldridge alleging physical violence because plaintiff does not allege that defendant Eldridge used excessive force.

The undersigned is inclined to find that plaintiff is not entitled to the names of those inmates who filed the grievances based on the security concerns alleged by defendants in the opposition. However, defendants did not file a declaration from the appropriate prison official in support of the claim that disclosure of the names of the inmates named in the grievances could jeopardize the safety of the institution. Accordingly, within fourteen days of the date of this order, defendants shall file a declaration in support of this privilege. Following receipt of this declaration, the undersigned will (if appropriate) order defendants to provide plaintiff with any

---

[2] The only reference to race in the complaint is one sentence at page 8: "Also, Officer Anderson and C/O Stanfield didn't write reports of the beating because they conspired in the racist, violent hate crime against me." (ECF No. 1 at 8.) The complaint contains no other allegations regarding race discrimination. This sentence, alone, does not state a potentially colorable claim for race discrimination against any of the defendants.

8

grievances filed against the defendants listed above, identified in the privilege log, alleging physical violence against an inmate, with the names of the inmate or inmates involved, redacted from the grievances.

### D. Request for Photos of Locations

In request no. 1, plaintiff requested to take photos of the blind area in the hallway rotunda of A Facility building 3 and building 5. (ECF No. 40 at 5.)

In request no. 2, plaintiff requested to "take photos of the legs irons and the cage in b-section of building (3) to cell 107 in A-section of building (3) the direct route and the opposite route. This evidence will show that it was no reason for the officers to take me the opposite way into the rotunda blind area. And far away from cell 107." (Id. at 6.)

In request no. 3, plaintiff requested that "photos be took on A-facility yard to show the long distance that building (1) and building (2) is from building (3). And this will show that C/O Stanfield and C/O Anderson was indeed too close to the incident in building (3) where they was working at the time to not have been there, when C/O Ridgeway and C/O Williams came all the way from building (1) and building (2) responding to the alarm and had to write part of the report because they even witness part of the incident." (Id. at 6.)

In request no 4, plaintiff requested, "photos of cell 107 in A section of build[ing] 3 on A Facility and the side doors of A & B section." (Id. at 7.)

Defendants objected to these requests on the grounds that they did not have possession or control of the property and were not authorized to permit plaintiff to take such photographs. (Id. at 5-7.) Defendants also objected that if copies of the requested photos were provided for an inmate's unrestricted possession and use, production of the photos could endanger the safety of inmates and staff at CDCR or jeopardize institutional security. (Id. at 5-7.) Without waiving those objections, defendants stated that they would provide for inspection copies of all photographs relevant to the request that they have in their possession, custody or control, to the litigation coordinator's office at CSP-Sac. (Id. at 5-7.) The litigation coordinator would arrange for plaintiff to have an opportunity to view the photos. (Id. at 5-7.)

////

In the reply to defendants' opposition, plaintiff states that he is not asking defendants to create evidence for him. (Id. at 41.) Plaintiff also admits that as an inmate, he cannot take photos. (Id.) Plaintiff argues that he is requesting that the "institution," which is not a defendant, be allowed to take the photos for his inspection. (Id.)

The undersigned is not authorized to order the "institution" to take photos on plaintiff's behalf. For that reason, plaintiff is only entitled to those photos in defendants' possession that are relevant to his requests. However, defendants' claim that plaintiff is not authorized to possess the photos, but only to inspect them, due to security concerns, is not well supported. Defendants did not provide a declaration by a responsible official in support of this claim. Accordingly, within fourteen days of the date of this order, defendants shall file this declaration.

According to defense counsel's declaration submitted in support of the opposition, plaintiff has already had an opportunity to inspect the photos. (ECF No. 40-1.) Following receipt of the declaration by the responsible official, the undersigned will consider whether plaintiff is entitled to possess the photos.

In request no.12, plaintiff requested to "take photos of the cameras that's located on A Facility yard." (ECF No. 40 at 7.)

In response to this request, defendants objected that they do not have possession or control of the property and are not authorized to permit plaintiff to take such photographs. (ECF No. No. 40 at 7.) Defendants object that if copies of the photographs were given to plaintiff, they could endanger the safety and other inmates and staff or jeopardize institutional security. (Id.) Without waiving those objections, defendants state that they do not have photographs of the cameras on A Facility yard in their possession, custody or control. (Id.)

The court cannot order defendants to produce evidence it does not possess, i.e., photographs of the cameras on A Facility. Accordingly, the motion to compel this request is denied.

E.  Requests for Photos of Plaintiff's Injuries

Plaintiff requests that he be provided with freeze-frame photos of his injuries from the excessive force video interview. In the opposition, defense counsel states that her office was

currently processing the request, and that plaintiff would have the requested photos before the discovery deadline on December 8, 2017. (ECF No. 40 at 9.) Because this issue is resolved, the motion to compel as to this request is denied as moot.

F. <u>Alleged Failure to Meet and Confer</u>

Defendants also argue that plaintiff failed to meet and confer with defense counsel regarding all discovery disputes before filing the motion to compel, as required by Federal Rule of Civil Procedure 37 and Local Rule 251. Defendants argue that before filing the motion to compel, plaintiff and defense counsel only conferred regarding the issue of plaintiff keeping photographs that depicted the institution and institutional property and getting additional photographs from the use-of-force videos.

In his reply to the opposition, plaintiff claims that he discussed all issues raised in the motion to compel with defense counsel on October 17, 2017.

It is not likely that the parties would have informally resolved the issues regarding plaintiff's requests for 602s filed against defendants and information regarding plaintiff's enemies. For this reason, the undersigned finds that plaintiff's alleged failure to meet and confer regarding these issues is excused.

Accordingly, ITI S HEREBY ORDERED that:

1. Plaintiff's motion to compel (ECF No. 39) is granted in part and denied in part;

2. Within fourteen days of the date of this order, defendants shall clarify whether the enemy list provided to plaintiff includes and identifies plaintiff's enemies in 2016; if the enemy list provided to plaintiff does not reflect plaintiff's 2016 enemies, defendants shall provide this list to plaintiff within that time, including which of those inmates were housed on B Facility on any dates between February 5, 2016, and July 17, 2016.

3. Within fourteen days of the date of this order, defendants shall file a declaration from the appropriate official in support of the claim that disclosure of the names who filed grievances against defendants alleging physical violence is privileged;

////

////

11

4. Within fourteen days of the date of this order, defendants shall file a declaration from the appropriate official in support of the claim that plaintiff should not be allowed to possess the photographs discussed in this order.

Dated: February 22, 2018

*Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Hou2561.com