UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM HOUSTON,

Plaintiff,

v.

L. ELDRIDGE, et al.,

Defendants.

No. 2: 16-cv-2561 WBS KJN P

FINDINGS AND RECOMMENDATIONS

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' summary judgment motion. (ECF No. 62.) Also pending is plaintiff's motion for issuance of a subpoena. (ECF No. 72.)

For the reasons stated herein, the undersigned recommends that defendants' summary judgment motion be granted in part and denied in part. The undersigned also recommends that plaintiff's motion for a subpoena, construed as a motion for discovery pursuant to Federal Rule of Civil Procedure 56(d), be denied.

II. Summary Judgment Standards

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

1

1  judgment as a matter of law." Fed. R. Civ. P. 56(a).

>    Under summary judgment practice, the moving party always bears
>    the initial responsibility of informing the district court of the basis
>    for its motion, and identifying those portions of "the pleadings,
>    depositions, answers to interrogatories, and admissions on file,
>    together with the affidavits, if any," which it believes demonstrate
>    the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

2

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on January 10, 2017 (ECF No. 16), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III. Plaintiff's Allegations and Legal Claims

   *Plaintiff's Allegations*

   This action proceeds on the original complaint, filed October 27, 2016, as to defendants Anderson, Barajas, Brewer, Eldridge, Huynh, Morales, Nyberg, Pacheco, Padilla, Rowe, Stanfield and Stuhr.

   Plaintiff alleges that on February 5, 2016, he returned to California State Prison-Sacramento ("CSP-Sac") after being out-to-court at California State Prison-Lancaster ("Lancaster"). Plaintiff alleges that defendants Brewer and Huynh came to Receiving and Release ("R and R") to escort plaintiff to his cell in A Facility, 3 Building, Cell 107. Plaintiff alleges that once they arrived at Cell 107, plaintiff noticed that the cell was dirty. Plaintiff told defendants that the cell was dirty and that it was supposed to be clean for new arrivals. Defendant Brewer became angry and said, "O.K. We're going to do our job." Defendants Brewer and Huynh then took plaintiff through the A Section side door into B Section and put plaintiff in the B Section cage. Defendants left plaintiff in handcuffs and leg irons.

   Defendants Brewer and Huynh returned with defendant Anderson. As they approached the cage they said, "Let's go." Plaintiff had a gut feeling that they were going to harm him. Plaintiff stated, "I'm not going anywhere until I see the Lieutenant." Defendant Brewer then opened the cage, snatched plaintiff out by the left shoulder and arm and violently shoved plaintiff into the hallway of the A3 Building Rotunda blind area. Defendants Huynh and Anderson followed plaintiff and defendant Brewer into the rotunda. Once they had plaintiff in the rotunda blind area, defendant Brewer ordered defendant Stanfield to put a spit mask over plaintiff's head. Then defendant Brewer slammed plaintiff's face against the wall. Defendant Brewer grabbed the back of plaintiff's head and started repeatedly bashing plaintiff's face into the wall.

   Plaintiff begged defendant Brewer to stop the assault and asked to be taken to his cell. Defendant Brewer replied, "If I take you to your cell, you're just going to talk shit…You know what? You just assaulted an officer." Defendant Brewer then took plaintiff to the floor and started punching and elbowing plaintiff in the face over and over again. Defendant Brewer screamed, "Stop resisting!" Defendant Huynh then started jumping up and down on plaintiff's

4

low back and rib area.

The alarm was activated and officers from different buildings came charging in. Plaintiff was taken to cell 107. Later that evening, Psychiatric Technician ("Psych Tech") Moran, escorted by defendant Stanfield, came to the cell with plaintiff's evening medication. Psych Tech Moran saw plaintiff's injuries and stated that she was going to "write this down." Defendant Stanfield signaled plaintiff not to tell what had happened. A few days later, plaintiff received a fabricated rules violation report, prepared by defendant Brewer, falsely accusing plaintiff of headbutting him in the face and ramming his shoulder and head into defendant Brewer's chest and face area. Plaintiff also alleges that defendant Huynh also prepared false reports regarding the February 5, 2016 incident. Plaintiff alleges that defendants Anderson and Stanfield did not write reports regarding the February 5, 2016 incident in support of defendants Brewer and Huynh. Plaintiff alleges that defendants Anderson and Stanfield falsely claimed that they were not present.

Plaintiff alleges that defendant Eldridge signed the final copy of the disciplinary report, following plaintiff's conviction for charges related to the February 5, 2016 incident. Plaintiff alleges that defendant Eldridge knew that plaintiff's due process rights had been violated during the disciplinary hearing. Plaintiff also alleges that there was insufficient evidence to support his disciplinary conviction.

Plaintiff alleges that defendant Eldridge knew that a "serious incident" had occurred on February 5, 2016, between plaintiff and defendants Brewer, Huynh, Anderson and Stanfield. Plaintiff alleges that he filed an administrative grievance against these defendants and also participated in an excessive force video on February 16, 2016. Plaintiff alleges that based on these circumstances, defendant Eldridge knew that these defendants were a threat to plaintiff.

Plaintiff alleges that defendant Eldridge failed to protect him from harassment by defendants Brewer and Huynh that occurred on February 17, 2016, in retaliation for plaintiff's participation in the excessive force video. Plaintiff alleges that on February 17, 2016, defendants Brewer and Huynh took a T.V. out of plaintiff's cell, left plaintiff in his cell and did not feed him. Plaintiff alleges that on February 17, 2016, defendants Brewer and Huynh prepared another fabricated disciplinary report charging plaintiff with "Delaying a Peace Officer of their Duties."

Plaintiff alleges that defendant Eldridge knew that California Department of Corrections and Rehabilitation ("CDCR") policy required that defendants Brewer and Huynh should not have been near plaintiff on February 17, 2016.

Plaintiff alleges that on June 10, 2016, he was placed in Administrative Segregation ("ad seg") because he presented an immediate threat to the safety of self or others. Plaintiff alleges that defendant Eldridge later made the decision to release plaintiff from ad seg to A Facility, EOP mainline, which was the same facility where defendants Brewer and Huynh worked. Plaintiff alleges that defendant Eldridge knew that releasing plaintiff to A Facility, EOP mainline, where these defendants worked, created a great risk of harm to plaintiff.

Plaintiff alleges that on July 17, 2016, when defendants Brewer and Huynh saw plaintiff on the exercise yard, defendant Brewer said, "You're out of handcuffs now, so do something! Do something!" Plaintiff alleges that as he walked to his building, defendant Brewer charged him from behind. Defendant Brewer then twisted plaintiff around and started punching plaintiff in the face. Plaintiff alleges that defendants Padilla and Huynh tackled plaintiff on the ground and had their knees in plaintiff's back. Plaintiff alleges that defendant Brewer tried to poke plaintiff's eyes out with his finger.

Plaintiff alleges that defendant Brewer wrote another fabricated rules violation report based on the July 17, 2106 incident alleging that plaintiff threatened to commit violence on him.

Plaintiff alleges that later on July 17, 2016, plaintiff was placed in the Ad Seg A Facility Building 5. As soon as plaintiff entered the building, escorting officer Nyberg asked plaintiff, "What happened earlier?" Defendant Nyberg then tripped plaintiff and slammed plaintiff to the ground. Defendants Nyberg, Barajas, Morales, Stuhr, Rowe and Pacheco then assaulted plaintiff.

Plaintiff seeks money damages and declaratory relief.

*Plaintiff's Legal Claims*

Defendants' statement of undisputed facts contains a description of plaintiff's legal claims, which plaintiff does not dispute. (See ECF No. 73 at 17.) The undersigned adopts this description herein, but with a more detailed description of the alleged failure to protect claims against defendant Eldridge: 1) on February 5, 2016, defendants Brewer, Huynh, Anderson and

6

Stanfield used excessive force and/or failed to intervene when excessive force was used; 2) defendants Brewer and Huynh falsified reports regarding the February 5, 2016 incident, and defendants Stanfield and Anderson failed to write reports regarding the February 5, 2016 incident, in violation of plaintiff's right to due process; 3) on February 17, 2016, defendants Brewer and Huynh retaliated against plaintiff for participating in an excessive force video interview by taking his television, leaving plaintiff in his cell with handcuffs on, failing to feed plaintiff and filing a false disciplinary report against plaintiff for "Delaying a Peace Officer of Their Duties;" 4) defendant Eldridge violated plaintiff's right to due process when she "signed off" on plaintiff's disciplinary conviction related to the February 5, 2016 incident; 5) defendant Eldridge failed to intervene to protect plaintiff from the retaliation that occurred on February 17, 2016; 6) defendant Eldridge failed to protect plaintiff from harm when she authorized plaintiff's release from ad seg to A Facility EOP mainline in July 2016; 7) defendants Brewer, Padilla and Huynh used excessive force against plaintiff during the first July 17, 2016 incident; and 8) defendants Nyberg, Barajas, Morales, Stuhr, Rowe and Pacheco used excessive force against plaintiff during the second July 17, 2016 incident.

IV.  Alleged Failure to Exhaust Administrative Remedies

In the opposition, plaintiff asserts that defendants' argument regarding failure to exhaust administrative remedies is untimely.  Plaintiff argues that defendants should have raised this issue in a motion to dismiss.  In the reply, defendants correctly observe that because plaintiff's exhaustion of administrative remedies was not clear from the face of the complaint, they were required to submit evidence regarding this issue in a summary judgment motion.  See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).  For these reasons, the undersigned finds that defendants have properly raised the argument that plaintiff failed to exhaust administrative remedies in the summary judgment motion.

In his opposition, plaintiff also argues that defendants blocked out necessary information in their exhibits.  In the reply, defendants state that the packets submitted with Voong's declaration are complete appeals from the third level of review and the office of appeals, and only identifying information of the officers and prison staff is redacted.  (ECF No. 82 at 5 (defendants'

1    reply).)  The undersigned finds that the redaction of information regarding officers and prison

2    staff is appropriate as this information is not relevant to this action.

3          A.  Legal Standard

4          Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o

5    action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other

6    Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

7    administrative remedies as are available are exhausted."  42 U.S.C.§ 1997e(a).  Prisoners are

8    required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549

9    U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

10         Exhaustion is required regardless of the relief sought by the prisoner and regardless of the

11   relief offered by the process, unless "the relevant administrative procedure lacks authority to

12   provide any relief or to take any action whatsoever in response to a complaint."  Booth v.

13   Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S.Ct. 1850, 1857, 1859 (2016).  The

14   exhaustion requirement applies to all prisoner suits relating to prison life.  Porter v. Nussle, 534

15   U.S. 516, 532 (2002).  An untimely or otherwise procedurally defective appeal will not satisfy the

16   exhaustion requirement.  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

17         As the U.S. Supreme Court recently explained in Ross, 136 S. Ct. at 1856, regarding the

18   PLRA's exhaustion requirement:

19                [T]hat language is "mandatory": An inmate "shall" bring "no action"
                  (or said more conversationally, may not bring any action) absent
20                exhaustion of available administrative remedies.... [T]hat edict
                  contains one significant qualifier: the remedies must indeed be
21                "available" to the prisoner. But aside from that exception, the
                  PLRA's text suggests no limits on an inmate's obligation to
22                exhaust—irrespective of any "special circumstances."

23   Id. (internal citations omitted).

24         Exhaustion of administrative remedies may occur if, despite the inmate's failure to

25   comply with a procedural rule, prison officials ignore the procedural problem and render a

26   decision on the merits of the grievance at each available step of the administrative process.  Reyes

27   v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (although inmate failed to identify the specific

28

8

doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

B. Discussion

*Claims Against Defendants Brewer and Huynh Regarding February 17, 2016*

Defendants argue that plaintiff failed to properly exhaust his administrative remedies regarding his claims that on February 17, 2016, defendants Brewer and Huynh retaliated against him for participating in the use of force interview by taking a T.V. out of plaintiff's cell, leaving plaintiff in his cell, failing to feed him and filing a fabricated disciplinary report against him. Defendants argue that plaintiff filed one administrative grievance raising claims related to the February 17, 2016 incident, i.e., grievance no. 16-00637. (See ECF No. 62-10 at 3-4; ECF No. 62-5 at 8.) Defendants argue that grievance no. 16-00637 did not properly exhaust plaintiff's claims regarding the February 17, 2016 incidents.

The undersigned discusses grievance no. 16-0037 herein.

On February 9, 2016, plaintiff submitted a first level grievance no. 16-00637, regarding his claim of excessive force on February 5, 2016. (Id. at 26.) This grievance was bypassed at the first level of review. (Id.) On February 25, 2016, this grievance was granted in part at the second level of review. (Id. at 27, 30-31.) On March 30, 2016, plaintiff appealed grievance no. 16-00637 to the third level of review. (Id. at 27.) In his third level appeal, plaintiff raised his claims against defendants Brewer and Huynh regarding the February 17, 2016 incident. (Id.)

On August 15, 2016, grievance 16-00637 was denied at the third, and final, level of review. (Id. at 24-25.) This third level response addressed the merits of plaintiff's claims regarding the February 5, 2016 incident. (Id.) This third level response also stated,

> The appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B).

(Id. at 25.)

////

9

"Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602." Cal. Code Regs. tit. 15, § 3084.1(b) (2016); see also Valencia v. Gipson, 2015 WL 2185220, *10 (E.D. Cal. 2015). Because plaintiff did not raise his claims against defendants Brewer and Huynh regarding the February 17, 2016 incidents in the first level of grievance 16-00637, the undersigned finds that 16-00637 did not administratively exhaust these claims.

The undersigned also observes that on July 10, 2017, plaintiff exhausted grievance no. 16-3877 at the third level, which (arguably) raised the claims regarding the February 17, 2016 incidents. (See ECF No. 62-10 at 72-73.) However, because grievance no. 16-3877 was exhausted *after* plaintiff filed his complaint on October 27, 2016, plaintiff's claims against defendants Brewer and Huynh regarding the February 17, 2016 incidents are not properly raised in this action. Jones v. Bock, 549 U.S. 199, 211 (2007) (prisoners are required to exhaust the available administrative remedies *prior* to filing suit) (emphasis added).

In his opposition, plaintiff argues that if he had filed another "regular" appeal regarding the February 17, 2016 incident, it would have been screened out as duplicative, citing exhibits C and I attached to the opposition. (ECF No. 73 at 19.) Plaintiff also argues that he exhausted these claims on May 15, 2016. (Id.) Plaintiff also contends that he filed a disciplinary appeal raising the claims regarding the February 17, 2016, also citing exhibit C. (Id.)

The undersigned does not understand plaintiff's claim that he exhausted this issue on May 15, 2016. Plaintiff's exhibit C includes documents regarding grievance no. 16-3877 and the related prison disciplinary. (Id. at 118-151.) As discussed above, plaintiff exhausted grievance no. 16-3877 after he filed this action. Plaintiff's exhibit I includes documents related to grievance no. 16-3435 which raised claims regarding the events of July 17, 2016. (Id. at 220-27.) This grievance did not raise claims regarding the February 17, 2016 incident.

For the reasons discussed above, the undersigned finds that plaintiff failed to exhaust administrative remedies with respect to his claims against defendants Brewer and Huynh regarding the events of February 17, 2016. Accordingly, defendants' motion for summary

1  judgment on these grounds should be granted.

2  *Claims Against Defendants Padilla and Huynh for Excessive Force Regarding the First*

3  *July 17, 2016 Incident*

4  Regarding the first July 17, 2016 incident, plaintiff alleges that defendants Brewer, Padilla

5  and Huynh used excessive force against him.  Defendants argue that the three grievances plaintiff

6  submitted related to the first July 17, 2016 incident, i.e., grievance nos. 16-2658, 16-3435 and 16-

7  3559, failed to exhaust administrative remedies as to the claims against defendants Padilla and

8  Huynh.  (See ECF No. 62-5 (declaration of C. Burnett discussing plaintiff's relevant grievances);

9  ECF No. 62-10 (declaration of M. Voong discussing plaintiff's relevant grievances).

10  Defendants argue that grievance no. 16-2658 failed to mention either defendant Padilla or

11  Huynh or their alleged use of excessive force during the first July 17, 2016 incident.  In grievance

12  16-2658, plaintiff alleged, in relevant part, that during the first July 17, 2106 incident,

13
14
15
> And once I was on the ground and handcuffed behind my back on 7-
> 17-16 C/O Brewer was on top of my back and had his hands under
> my face trying to poke my eyes out with his thumb while the other
> officers was pile on top of me.

16  (ECF No. 62-10 at 18.)

17  The third level decision in grievance no. 16-2658 acknowledged plaintiff's claim that

18  officers, in addition to defendant Brewer, were involved in the first July 17, 2016 incident.  (Id. at

19  14.)

20  The amount of detail in an administrative grievance necessary to properly exhaust a claim

21  is determined by the prison's applicable grievance procedures.  Jones, 549 U.S. at 218; see also

22  Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (''To provide adequate notice, the prisoner

23  need only provide the level of detail required by the prison's regulations'').  The level of

24  specificity required in the appeal is described in a regulation:

25
26
27
28
> The inmate or parolee shall list all staff member(s) involved and shall
> describe their involvement in the issue. To assist in the identification
> of staff members, the inmate or parolee shall include the staff
> member's last name, first initial, title or position, if known, and the
> dates of the staff member's involvement in the issue under appeal. If
> the inmate or parolee does not have the requested identifying
> information about the staff member(s), he or she shall provide any

other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a) (3–4).9

However, the Ninth Circuit has held that "a prisoner exhausts such administrative remedies as are available...under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); see also Franklin v. Foulk, 2017 WL 784894, at *4–5 (E.D. Cal. Mar. 1, 2017); Franklin v. Lewis, 2016 WL 4761081, at *6 (N.D. Cal. Sept. 13, 2016). Thus, a prisoner's failure to list all staff members involved in an incident in his inmate grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude his exhaustion of administrative remedies. Reyes, 810 F.3d at 958; Foulk, 2017 WL 784894, at *4 ("[T]he court in Reyes found that even though the plaintiff's grievance failed to name two physicians on the prison's three-person pain committee, prison officials were put on notice of the nature of the wrong alleged in the suit -- that the plaintiff was wrongfully denied pain medication."); Lewis, 2016 WL 4761081, at *6 ("[T]o the extent Defendants argue that Plaintiff failed to comply with a procedural requirement by not naming Defendants in [his appeal], this deficiency is not necessarily fatal to Plaintiff's claim pursuant to Reyes"); see also Bulkin v. Ochoa, 2016 WL 1267265, at *1–2 (E.D. Cal. Mar. 31, 2016) (declined to dismiss reckless endangerment claims based on failure to name two defendants in appeal because prison officials addressed the claim on the merits, were alerted to the problem, knew the actors involved, and were given an opportunity to rectify the alleged wrong).

Nonetheless, for administrative remedies to be exhausted by California prisoners as to defendants who were not identified in the inmate grievance, there must be a "sufficient connection" between the claim in the appeal and the unidentified defendants such that prison officials can be said to have had "notice of the alleged deprivation" and an "opportunity to

resolve it." Reyes, 810 F.3d at 959 (finding that plaintiff had satisfied PLRA exhaustion requirements as to two prison doctors despite not having identified them in his inmate appeals because there was a sufficient connection between plaintiff's appeal based on inadequate pain management, and the doctors, who served on the prison committee that had denied plaintiff medication); McClure v. Chen, 246 F.Supp 3d 1286, 1293–94 (E.D. Cal. 2017) (remedies exhausted even though doctors not named in appeal; prison was placed on notice).

While grievance no. 16-2658 did not name defendants Huynh or Padilla, it clearly alleged that other officers were involved in the first July 17, 2016 incident. Grievance 16-2658 also described the conduct of the "other officers," i.e., they piled on top of plaintiff as defendant Brewer tried to poke plaintiff's eyes out. These allegations match the claims against defendants Huynh and Padilla made in the instant action.

Grievance no. 16-2658 put prison officials on notice that other officers were involved in first July 17, 2016 incident, as it specifically described their conduct. In addition, no part of grievance 16-2658 was rejected based on plaintiff's failure to identify by name the other officers involved in the first July 17, 2016 incident. In other words, grievance no. 16-2658 was addressed on the merits. For these reasons, the undersigned finds that grievance 16-2658 exhausted plaintiff's claims against defendants Huynh and Padilla regarding the first July 17, 2016 incident.

Defendants also cite grievance no. 16-3465 in which plaintiff alleged that defendant Huynh was present during the first July 17, 2016 incident. Grievance no. 16-3465 in the court records is difficult to read. (See ECF No. 62-5 at 29.) However, grievance no. 16-3465 was cancelled as being duplicative of grievance no. 16-2658. (Id. at 28.)

Defendants also cite grievance no. 16-3559, in which plaintiff appealed the cancellation of grievance no. 16-3465 on the grounds that the appeal screener misconstrued the issue and took it out of context. (Id. at 35.) Plaintiff argued that grievance no. 16-3465 was tied to the Staff Complaint in grievance no. 16-2658, but it was different in that plaintiff requested a hold placed on video footage for evidence. (Id.)

Defendants argue that in grievance no. 16-3559, plaintiff abandoned his claim against defendant Huynh regarding his involvement in the first July 17, 2016 incident, which was raised

13

in grievance no. 16-3465. This appears to be true. However, the initial rejection of grievance no. 16-3465, which raised the issue of defendant Huynh's involvement in the first July 17, 2016 incident, as duplicative of grievance no. 16-2658, supports the undersigned's finding that grievance no. 16-2658 exhausted plaintiff's administrative remedies as to the involvement of defendants Huynh and Padilla in the first July 17, 2016 incident.

For the reasons discussed above, defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies as to his claim that defendants Huynh and Padilla used excessive force during the first July 17, 2016 incident should be denied.

*Due Process Claims Regarding the February 5, 2016 Incident*

Defendants allege that plaintiff filed a grievance alleging that defendants filed false reports or failed to write reports regarding the February 5, 2016 incident, and that defendant Eldridge allowed the senior hearing officer at the disciplinary hearing to refuse to consider relevant evidence, i.e., grievance no. 16-2902. (See ECF No. 62-10 at 47.)

Defendants argue that plaintiff exhausted grievance no. 16-2902, on July 19, 2017. (Id.) Thus, defendants move for summary judgment as to plaintiff's due process claims regarding the February 5, 2016 incident on the grounds that plaintiff administratively exhausted these claims after he filed the instant action on October 27, 2016. Jones v. Bock, 549 U.S. 199, 211 (2007) (prisoners are required to exhaust the available administrative remedies prior to filing suit) (emphasis added).

In his opposition, plaintiff argues that the issues raised in appeal no. 16-2902 had already been addressed in an appeal denied before he filed this action. (ECF No. 73 at 21-22.) Plaintiff cites his exhibits A and G. (Id.) Plaintiff's exhibit G contains documents related to grievance no. 16-2658. (Id. at 195-204.) Grievance no. 16-2658 concerns the second July 17, 2016 incident. (Id.) Thus, grievance no. 16-2658 is unrelated to the February 5, 2018 incident.

Plaintiff's exhibit A includes documents related to grievance no. 16-637. (Id. at 56-66.) Grievance no. 16-637 alleged that the defendants involved in the February 5, 2018 incident used excessive force. Plaintiff appears to argue that this grievance, denied at the third level of review on August 16, 2015, exhausted his related due process claims.

14

For the reasons discussed herein, the undersigned finds that grievance no. 16-637 did not exhaust plaintiff's administrative remedies as to his due process claims regarding the February 5, 2016 incident. The undersigned herein compares the claims raised in grievance nos. 16-637 and 16-2902.

Plaintiff submitted grievance no. 16-637 on February 9, 2016, i.e., four days after the February 5, 2016 incident. (Id. at 58.) In the first level grievance, plaintiff described the subject of his appeal as "physical abuse." (Id.) Plaintiff alleged that defendants used excessive force. (Id.) In the second level appeal of grievance no. 16-637, plaintiff alleged that defendants "fabricated a 115 report." (Id. at 59.) The third level appeal decision, issued August 15, 2016, described plaintiff's argument as alleging that defendant used excessive force against him on February 5, 2016. (Id. at 63.) The response contained plaintiff's description of the incident, but did not mention any claim by plaintiff regarding false reports. (Id.)

Plaintiff submitted grievance 16-2902 on July 31, 2016. (ECF No. 62-10 at 49.) Plaintiff alleged that defendants Huynh and Brewer wrote fabricated reports. (Id.) Plaintiff also alleged that defendants Stanfield and Anderson failed to write reports regarding the incident that made it seem like they did not witness the incident. (Id. at 51.) Plaintiff alleged that defendant Eldridge was in charge of the due process at his disciplinary hearing. (Id. at 50.) Plaintiff alleged that defendant Eldridge "did the wrong thing." (Id. at 51.) Plaintiff requested that the disciplinary charges be dismissed. (Id. at 49.) This grievance was bypassed at the first level of review and granted in part at the second level of review on August 26, 2016. (Id. at 50, 57.)

On January 10, 2017, plaintiff's third level grievance was rejected because plaintiff had not submitted the appeal printed legibly in ink or typed on the lines provided on the appeal form. (Id. at 69.) On February 17, 2017, plaintiff's third level appeal was again rejected because it was missing the CDCR Form 602 form. (Id. at 68.)

On July 19, 2017, grievance no. 16-2092 was denied at the third level of review. (Id. at 47.) The third level decision described plaintiff's argument as alleging that defendants Brewer and Huynh falsified reports regarding the February 5, 2016 incident. (Id.) The third level decision also stated that plaintiff claimed that defendants Anderson and Stanfield failed to prepare

15

reports, and that defendant Eldridge allowed staff misconduct. (Id.)

After reviewing grievances nos. 16-637 and 16-2092, it is clear that these grievances addressed different, although related, issues. Grievance no. 16-637 addressed plaintiff's claims of excessive force, while grievance no. 16-2092 addressed plaintiff's claims alleging false reports and due process violations in connection with his related disciplinary proceeding. Plaintiff's brief mention of false reports in his second level appeal of grievance no. 16-637 did not put prison officials on notice that he was raising any claims regarding false reports or due process violations in connection with his prison disciplinary proceedings. It does not appear that plaintiff's disciplinary hearing had even occurred at the time he filed grievance no. 16-637.

The record demonstrates that plaintiff exhausted his claims regarding due process violations regarding the February 5, 2016 incident *after* he filed this action. Accordingly, defendants' motion for summary judgment on the grounds that plaintiff exhausted these claims after filing this action should be granted.

*Claims Against Defendant Eldridge Regarding February 17, 2016 Incidents*

Plaintiff alleges that defendants Brewer and Huynh retaliated against him on February 17, 2016, because defendant Eldridge failed to protect plaintiff from defendants Brewer and Huynh after the February 5, 2016 incident. Defendants move for summary judgment as to this claim on the grounds that plaintiff administratively exhausted this claim after he filed this action. Defendants contend that plaintiff raised this claim against defendant Eldridge in grievance no. 16-3877 which was denied at the third level on July 10, 2017, i.e., after this action as filed. (See ECF No. 62-10 at 72.)

In his opposition, plaintiff argues that he raised the claim that defendant Eldridge failed to protect him from defendants Brewer and Huynh in a grievance that was denied before he filed this action. (ECF No. 73 at 22.) In support of this argument, plaintiff cites his exhibits A and G. (Id.) Plaintiff's Exhibit A includes documents related to grievance no. 16-637. (Id. at 57-66.) As discussed above, grievance no. 16-637 raised plaintiff's claim regarding the February 5, 2016 incident. Plaintiff's exhibit G includes documents related to grievance no. 16-2658. (Id. at 195-204.) Grievance no. 16-2658 raised plaintiff's claims regarding the July 17, 2016 incidents. (Id.)

16

Grievance nos. 16-637 and 16-2658 did not raise plaintiff's claim that defendant Eldridge failed to protect him from defendants Brewer and Huynh on February 17, 2016.

The record discussed above demonstrates that plaintiff administratively exhausted his claim against defendant Eldridge regarding the February 17, 2016 incident after he filed this action. On this ground, defendants should be granted summary judgment as to this claim.

*Due Process Claim Regarding Second July 17, 2016 Incident*

Defendants argue that plaintiff administratively exhausted his claim that defendant Eldridge violated his right to due process regarding the second July 17, 2016 incident after he filed this action. After reviewing the complaint, and the undisputed description of plaintiff's claims, it does not appear that plaintiff is raising such a claim. However, in an abundance of caution, the undersigned addresses this argument herein.

In grievance no. 16-3784 plaintiff alleged that defendant Eldridge supported the injustices that occurred in connection with the disciplinary charges filed against plaintiff regarding the second July 17, 2016 incident. (ECF No. 62-10 at 35.) On March 10, 2017, this grievance was denied at the third level of review, i.e., after plaintiff filed this action. (Id.)

In his opposition, plaintiff argues that he had previously exhausted his due process claim against defendant Eldridge regarding the second July 17, 2016 incident in other grievances. (ECF No. 73 at 22.) In support of this argument, plaintiff cites his exhibits A and G. (Id.) Plaintiff's Exhibit A includes documents related to grievance no. 16-637. (Id. at 57-66.) As discussed above, grievance no. 16-637 raised plaintiff's claim regarding the February 5, 2016 incident. (Id.)

Plaintiff's exhibit G includes documents related to grievance no. 16-2658. (Id. at 195-204.) Grievance no. 16-2658 raised plaintiff's excessive force claims regarding the July 17, 2016 incidents. (Id.) Grievance no. 16-2658 did not raise a claim that defendant Eldridge violated plaintiff's due process rights in connection with the disciplinary charges filed against plaintiff regarding the second July 17, 2016 incident.

The record demonstrates that, to the extent plaintiff raises a claim alleging that defendant Eldridge violated his due process rights in connection with the disciplinary charges filed against plaintiff regarding the second July 17, 2016 incident, plaintiff exhausted his administrative

remedies as to this claim after filing this action. On this ground, defendants should be granted summary judgment as to this claim.

V. Failure to Protect Claim Against Defendant Eldridge

Plaintiff alleges that defendant Eldridge failed to protect him from excessive force, in violation of the Eighth Amendment, when she made the decision to release plaintiff from ad seg to A Facility, EOP mainline, in July 2016, which was the same facility where defendants Brewer and Huynh worked. Plaintiff alleges that defendant Eldridge knew that releasing plaintiff to A Facility, EOP mainline, where these defendants worked, created a great risk of harm to plaintiff.

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Then he must fail to take reasonable measures to abate the substantial risk of serious harm. Id. at 847. Mere negligent failure to protect an inmate from harm is not actionable under § 1983. Id. at 835.

Defendants move for summary judgment as to plaintiff's failure to protect claim against defendant Eldridge on the grounds that plaintiff was not exposed to a substantial risk of harm. In other words, defendants move for summary judgment based on the objective component of an Eighth Amendment failure to protect claim. In support of this argument, defendants cite defendant Eldridge's declaration where she states, in relevant part,

> 11. As AW [Associate Warden], I also regularly served as a Chairperson during the Institutional Classification Committee (ICC) hearings which determined programming and housing. There are several factors considered when determining the appropriate programming or housing for an inmate, including an inmate's current

18

programs, level of care, level of functioning, mental health status, security level, disciplinary history, staff alerts and enemy listings. Staff alerts indicate when an inmate and staff member need to be separated, and they issued for extreme circumstances. For example, a staff alert could be issued in a situation where an inmate seriously battered a staff member, or if an inmate and staff have a personal history. We normally do not issue a staff alert for an incident where force was used.

12. As the Chairperson, I had access to and review enemy listings (Separation Alerts) when determining classification. I noted that Houston had an enemy alert on B Facility, but the inmate was a General Population (GP) inmate on B Facility and Houston was an Enhanced Outpatient Program (EOP) inmate.

13. On July 5, 2016, I was the Chairperson on the ICC hearing regarding Houston's program review, and Houston was present in the committee. After reviewing Houston's case factors, I released Houston to B Facility. At that time, I was not aware that the B Facility GP and EOP inmates could possibly interact with each other during EOP group escorts to the Treatment Center, via the GP yard. The potential threat of conflict was brought to my attention by a F Facility Captain, and for that reason, there was a Captain to Captain agreement to retain Houston on A Facility once he was released from PSU because he had no enemy concerns or staff alerts on A Facility. Houston was retained on A Facility because of the safety and security risk of housing him on B Facility, where there was a current enemy concern and potential threat to institutional security. See attached as Exhibit D, a copy of the committee hearing notes.

14. The Institution Executive Review Committee (IERC) reviews all use-of-force incidents to determine whether nor not staff used force in compliance with departmental policy. During the times alleged in the complaint, the CSP-Sacramento IERC consisted of the In-Service Training (IST) Manager, the Warden, the Chief Deputy Warden, all Associate Wardens, all Captains, a Medical Representative, a Mental Health Representative, the Use-of-Force (UOF) Analyst, and an Inspector General Representative. Also, all Sergeants and Lieutenants available to attend provided input. Additionally, any time an inmate makes an allegation of excessive force, verbally or in writing, the Allegation Unnecessary Excessive Force (AUEF) video-interview is completed by a non-involved Sergeant.

15. Houston made allegations of excessive force, but all allegations of excessive force regarding defendants were thoroughly reviewed by the IERC, and through institutional grievance processes, and were not substantiated. The findings indicated there was no evidence that staff acted inappropriately, that they were targeting Houston, or that there was any reason why Houston could not program successfully on A Facility where staff worked. I was a contributor of the review process and can attest to the integrity of the investigations done and the analysis completed. I had no reason to question the results of the use-of-force investigation or evidence supporting the finding that defendants did not violate policy with regard to the use-of-force incidents with Houston.

(ECF No. 62-6 at 6-7.)

In his opposition, plaintiff argues that defendant Eldridge knew that defendants Brewer and Huynh used excessive force against him based on her review of the excessive force video interview. (ECF No. 73 at 6-7.) Plaintiff also alleges that defendant Eldridge knew that on February 17, 2016, defendants Brewer and Huynh retaliated against him for participating in the use of force video. (Id. at 7.)

As stated above, defendants move for summary judgment as to this failure to protect claim based on the objective component of the Eighth Amendment, i.e., plaintiff did not face a serious risk of harm when he returned to A Facility on July 5, 2016. The undersigned instead, for the reasons stated herein, recommends that defendant Eldridge be granted summary judgment as to this claim based on the subjective component of the Eighth Amendment, i.e., defendant Eldridge did not act with deliberate indifference.

The undersigned finds that defendant Eldridge did not act with deliberate indifference to plaintiff's safety when she released plaintiff to A Facility on July 5, 2016. In making this decision, defendant Eldridge relied on the results of the IERC investigation, which did not substantiate plaintiff's claims of excessive force on February 5, 2016, as well as the lack of staff reports in plaintiff's file. While plaintiff disputes the results of the IERC investigation, plaintiff has not provided evidence demonstrating that defendant Eldridge had information on July 5, 2016, based on which she should have rejected the results of the IERC investigation. The record before the court demonstrates that defendant Eldridge had no information from which she could have found that plaintiff faced a serious risk of harm from defendants Brewer and Huynh when she released plaintiff to A Facility on July 5, 2016.

Plaintiff also argues that defendant Eldridge knew that defendants Brewer and Huynh retaliated against him on February 17, 2016, for participating in the use of force video by removing his T.V. from his cell, leaving him in his cell and not feeding him, and filing a disciplinary report charging plaintiff with "Delaying a Peace Officer of their Duties." Defendants' summary judgment motion does not directly address this argument. As discussed above, plaintiff did not exhaust administrative remedies as to this retaliation claim against

20

defendants Brewer and Huynh.  It is not clear whether plaintiff administratively exhausted his related claim that defendant Eldridge should not have released him A Facility based on this alleged retaliation.

However, even assuming defendant Eldridge knew of plaintiff's claim that defendants retaliated against him on February 17, 2016 by taking his T.V., not feeding him and filing a false disciplinary report, the undersigned does not find that these allegations would have put defendant Eldridge on notice that plaintiff faced a serious risk of harm from defendants Brewer and Huynh were he returned to A Facility, particularly because the IERC could not substantiate plaintiff's excessive force claims.

For the reasons discussed above, the undersigned recommends that defendant Eldridge be granted summary judgment as to this failure to protect claim.

VI.  Heck v. Humphrey

Defendants argue that plaintiff's excessive force claims regarding the February 5, 2016 incident and second July 17, 2016 incident are barred by Heck v. Humphrey.

In Heck v. Humphrey, the Supreme Court held that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." Heck, 512 U.S. 477, 481 (1994).  A plaintiff cannot maintain a § 1983 action to recover damages for "harm caused by actions whose unlawfulness would render [his] conviction or sentence invalid" when his sentence and conviction have not previously been reversed, expunged, declared invalid, or called into question upon issuance of a writ of habeas corpus by a federal court.  Id. at 486–87.  The Supreme Court has extended this holding to civil-rights actions in which the plaintiff seeks declaratory or injunctive relief as well as damages.  Edwards v. Balisok, 520 U.S. 641, 648 (1997).

In the summary judgment motion, defendants argued that plaintiff's excessive force claims regarding the February 5, 2016 and second July 17, 2016 incidents were Heck barred because plaintiff was found guilty of disciplinary convictions related to these incidents for which he was assessed time credits.

1    In his opposition, plaintiff argued that although he was assessed time credits following

2    disciplinary convictions related to the February 5, 2016 and second July 17, 2016 incidents, his

3    sentence was not extended by these assessments.  In the reply to the opposition, defendants

4    concede that by the time plaintiff received these rules violation convictions, he was no longer able

5    to have additional time added to his confinement.  Thus, defendants appear to withdraw their

6    argument that these claims are Heck barred.  Accordingly, the undersigned will not address this

7    issue in these findings and recommendations.[1]

8    VII.  Motion for Discovery

9    Plaintiff requests that subpoenas be issued for photographs of the areas where the alleged

10   excessive force incidents occurred.  Plaintiff also requests copies of the use of force interview

11   videos he has participated in.  Additionally, plaintiff requests investigation reports of the inmate

12   witnesses of the excessive force incidents.  Plaintiff alleges that he requested these photographs,

13   reports and videos from the attorney who represented him in the related state court criminal

14   proceedings, and her investigator, but he has not received them.  Plaintiff alleges that he cannot

15   file an adequate opposition to defendants' summary judgment motion without these photographs,

16   reports and videos.

17   As discussed above, the undersigned construes plaintiff's motion for subpoenas as a

18   motion pursuant to Federal Rule of Civil Procedure 56(d) to defer defendants' summary judgment

19   in order to obtain additional discovery.  Rules 56 provides that "[i]f a nonmovant shows by

20   affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

21   opposition, the court may: (1) defer considering the motion or deny it; or (2) allow time to obtain

22   affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R.

23   Civ. P. 56(d).  "A party requesting a continuance pursuant to Rule 56[d] must identify by affidavit

24   the specific facts that further discovery would reveal, and explain why those facts would preclude

25   summary judgment."  Tatum v. City & Cty. of San Francisco, 441 F.3d 1090, 1100 (9th Cir.

26   _____

27   [1]  In her declaration dated May 22, 2018, defendant Eldridge states that the rules violation report
     regarding the first July 17, 2016 is still pending review with the District Attorney and has not

28   been adjudicated.  (See ECF No 62-6 at 5.)  At the time of trial, defendants shall be required to
     update the court on the status of the District Attorney's review of this rules violation.

2006). "The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." <u>Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.</u>, 525 F.3d 822, 827 (9th Cir. 2008).

With respect to plaintiff's three excessive force claims, defendants move for summary judgment only as to plaintiff's claim that defendants Padilla and Huynh used excessive force during the July 17, 2016 incident on the grounds that plaintiff failed to exhaust administrative remedies. The undersigned has recommended that this portion of defendants' summary judgment motion be denied. Thus, if the district court adopts these findings and recommendations, all three of plaintiff's excessive force claims will be set for trial. Thus, plaintiff does not require the evidence sought in the pending motion to oppose defendants' summary judgment motion. For this reason, plaintiff's motion for subpoenas, construed as a motion to defer defendants' summary judgment motion, should be denied.

VIII. <u>Conclusion</u>

Defendants move for summary judgment as to the merits of plaintiff's claim that defendants Brewer and Huynh retaliated against him on February 17, 2016, for participating in the use of force video interview. (<u>See</u> ECF No. 62-2 at 22-25.) Defendants also move for summary judgment as to the merits of plaintiff's claim that defendant Eldridge violated plaintiff's right to due process during the rules violation process. (<u>Id.</u> at 26-28.) The undersigned need not address the merits of these claims because plaintiff failed to exhaust administrative remedies as to these claims.

In summary, the undersigned recommends that defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies be granted as to the following claims: 1) defendants Brewer and Huynh retaliated against him on February 17, 2016, for participating in the use of force video; 2) defendants Brewer, Huynh filed false reports regarding the February 5, 2016 incident in violation of plaintiff's right to due process; defendants Stanfield and Anderson failed to prepare reports regarding the February 5, 2016 incident in violation of plaintiff's right to due process; 3) defendant Eldridge violated plaintiff's right to due

process when she "signed off" on plaintiff's disciplinary conviction related to the February 5, 2016 incident; 4) defendant Eldridge failed to intervene to protect plaintiff from the retaliation that occurred on February 17, 2016; and 5) defendant Eldridge violated plaintiff's right to due process regarding the second July 17, 2016 incident.

The undersigned recommends that defendants' motion for summary judgment also be granted as to the merits of plaintiff's claim that defendant Eldridge violated plaintiff's Eighth Amendment rights when she released plaintiff to A Facility in July 2016.

The undersigned recommends that defendants' summary judgment motion, on the grounds that plaintiff failed to exhaust administrative remedies as to his excessive force claim against defendants Padilla and Huynh regarding the first July 17, 2016 incident, be denied.

As discussed above, defendants have withdrawn their summary judgment motion as to the argument that plaintiff's excessive force claims regarding the February 5, 2016 and second July 17, 2016 incidents are barred by Heck v. Humphrey. Accordingly, if these findings and recommendations are adopted, this action will proceed on the following claims: 1) on February 5, 2016, defendants Brewer, Huynh, Anderson and Stanfield used excessive force and/or failed to intervene when excessive force was used; 2) defendants Brewer, Padilla and Huynh used excessive force against plaintiff during the first July 17, 2016 incident; and 3) defendants Nyberg, Barajas, Morales, Stuhr, Rowe and Pacheco used excessive force against plaintiff during the second July 17, 2016 incident.

Finally, the undersigned observes that plaintiff's opposition, including exhibits, is 405 pages long. Based on this extensive briefing, if plaintiff files objections to these findings and recommendations, the objections may be no longer than 30 pages long, including exhibits.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for subpoenas (ECF No. 72), construed as a motion for discovery pursuant to Federal Rule of Civil Procedure 56(d), be denied;

2. Defendants' motion for summary judgment (ECF No. 62) be granted as to the merits of plaintiff's claim that defendant Eldridge violated plaintiff's Eighth Amendment rights when she released him to A Facility in July 2016;

3.  Defendants' summary judgment be granted as to the following claims on grounds that plaintiff failed to exhaust administrative remedies: 1) defendants Brewer and Huynh retaliated against him on February 17, 2016 for participating in the use of force video; 2) defendants Brewer, Huynh, Stanfield and Anderson violated plaintiff's right to due process in connection with reports they prepared of failed to prepare regarding the February 5, 2016 incident; 3) defendant Eldridge violated plaintiff's right to due process when she "signed off" on plaintiff's disciplinary conviction related to the February 5, 2016 incident; 4) defendant Eldridge failed to intervene to protect plaintiff from the retaliation that occurred on February 17, 2016; 5) defendant Eldridge violated plaintiff's right to due process regarding the second July 17, 2016 incident;

4.  Defendants' motion for summary judgment on grounds that plaintiff failed to exhaust administrative remedies as to his excessive force claim against defendants Padilla and Huynh regarding the first July 17, 2016 incident be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 10, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Hou2561.sj(2)

25